# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA

---

Fenyang Stewart,

*Petitioner*,

v.

Gina Raimondo, et al.

*Respondents*.

---

**PETITION FOR A WRIT OF MANDAMUS AND EMERGENCY MOTION
FOR A STAY OF THE PROCEEDINGS BELOW**
(D.C. District Court, 1:23-cv-00149-RBW;
District Court for the Eastern District of Virginia, Alexandria Division
Case No. 1:23-cv-01525-LMB)

Fenyang Stewart
Petitioner, *pro se*
6040 Richmond Hwy Apt 707
Alexandria, VA 22312
(757) 506-4579
fstewart2@gmail.com

DATED: December 13, 2023

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………2

JURISDICTIONAL STATEMENT AND PROCEDURAL HISTORY………4

STANDARD OF REVIEW……………………………..……………………...8

ARGUMENT………………………………………..…………….………10

    A.    The District Court's Transfer Failed To Comply With The Procedural Rule Set Out In *Starnes*……………………………10

    B.    Petitioner's right to issuance of the writ is clear and undisputable based on the Statutes of Large, which 35 U.S.C. 1 is merely prima facie evidence and take precedent over..……..12

    C.    Petitioner has no other adequate means to attain the relief he desires……………………………………………………..20

    D.    The Writ is appropriate under all Circumstances……...22

CONCLUSION…………………………………………………………..24

CERTIFICATE OF SERVICE AND CERTIFICATE………...…..…….……..25

Page(s)

Cases

*Cheney v. United States Dist. Ct.*,
  542 U.S. 367 (2004) .........................................................................11
*In re Chatman–Bey*,
  718 F.2d 484 (D.C. Cir. 1983) ........................................................11
*In re Halkin*,
  598 F.2d 176 (D.C. Cir. 1979) ........................................................11
*In re Nine Mile Ltd.*,
  673 F.2d 242 (8th Cir.1982).............................................................9
*In re: Briscoe*,
  976 F.2d 1425 (D.C. Cir. 1992) .................................................8, 9, 11
*In re: Executive Office of the President*,
  215 F.3d 20 (D.C. Cir. 2000) (dismissing...........................................7
In re: Scott,
  709 F.2d 717 (D.C. Cir. 1983) ........................................................11
*In re: Sealed Case*,
  151 F.3d 1059 (D.C.Cir.1998) ..........................................................7
*In re: Sosa*,
  712 F.2d 1479 (D.C. Cir. 1983) ........................................................7
*NetCoalition v. S.E.C.*,
  715 F.3d 342 (D.C. Cir. 2013) ..........................................................3
*New York Tel. Co.*,
  434 U.S. 159 (1977) ........................................................................4
*Potomac Elec. Power Co. v. I.C.C.*,
  702 F.2d 1026 (D.C. Cir.) ................................................................3
*Roche v. Evaporated Milk Ass'n*,
  319 U.S. 21 (1943) .........................................................................11
*Starnes*,
  512 F.2d ................................................................................7, 8, 9
*Ukiah Adventist Hosp. v. FTC*,
  981 F.2d 543 (D.C. Cir. 1992) ........................................................11

Statutes

28 U.S.C. § 1651(a)............................................................................3, 12
35 U.S.C. 1..................................................................................Passim
35 U.S.C. 1(a)-(b)...............................................................................12
Title 35 U.S.C. 1(a) ...........................................................................15
U.S. Code Section 1(a) ......................................................................14

Rules

Fed. R. Civ. P. 60(b)(6) ..................................................................................1

Other Authorities

794 ..............................................................................................................15, 17
H.R. 7794 ......................................................................................................19
HR 792 .....................................................................................................15, 17
Public Law 593 ......................................................................................15, 17, 18

## JURISDICTIONAL STATEMENT AND PROCEDURAL HISTORY

Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has authority to issue a writ of mandamus to "effectuate or prevent the frustration of orders previously issued." *NetCoalition v. S.E.C.*, 715 F.3d 342, 354 (D.C. Cir. 2013) (quoting *Potomac Elec. Power Co. v. I.C.C.* ("*PEPCO*")), 702 F.2d 1026, 1032 (D.C. Cir.), supplemented, 705 F.2d 1343 (D.C. Cir. 1983)); see also *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) ("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained"). Jurisdiction of this Court is inextricably intertwined with the procedural history of the proceedings in the district, as explained herein, in order to show that it is clearly established over the proceedings below.

On January 19, 2023, Fenyang Stewart ("Petitioner"), proceeding *pro se*, filed a complaint in the U.S. District Court for the District of Columbia against Gina M. Raimondo, in her official capacity as the Secretary of the U.S. Department of Commerce (Commerce), and Robert Fennema ("Fennema") a Federal employee at the U.S. Patent & Trademark Office ("USPTO"), in his individual capacity (collectively, "Respondents"). (D.C. District Court, 1:23-cv-00149-RBW, Dkt. No. 1) On May 3, 2023, Petitioner filed an amended complaint. (Dkt. No. 11).

4

In the amended complaint, Petitioner alleges his non-selection as a Patent Examiner on or around May 2021 was a result of the combination of Fennema's retaliatory statements made to the Selecting Official and Commerce's lack of oversight and failure to bring USPTO's policies on hiring and rehiring, reinstatement, Schedule A, and workplace violence policy into alignment with it's own policies of the same name, and its failure to specifically modify and/or eliminate USPTO's Ban & Bar policy and Rehire Analysis policy, which are alleged to be discriminatory on the basis of race, disability, and prior protected EEO activity. *See* Am. Complt. ¶¶ 78-104. In the amended complaint, Stewart alleged Respondent Fennema, sued in his individual and official capacities, as a Supervisory Patent Examiner working for the Department of Commerce component the U.S. Patent and Trademark Office and is a resident of Burke, VA. Stewart further alleged in the amended complaint that Commerce's principal office is located in Washington, D.C.

On June 13, 2021, Respondents jointly moved the district court to transfer the case to the Eastern District of Virginia for lack of venue and to dismiss the complaint for failure to state a claim upon which relief can be granted, or, in the alternative, for improper venue.

On November 7, 2023, the district court held oral argument on the motion telephonically with the parties. Although the motion was brought by the Respondents, the District Court ordered Stewart to defend against the motion first

5

and had the attorney for the Respondents respond second, with no opportunity for

rebuttal by Petitioner.  Petitioner had no opportunity to request rebuttal but would

have had done so had the court not immediately ruled on the motion after

Respondents' counsel completed his oral argument. Later that day, the court put an

entry into the docket stating the following:

> ORDER. In accordance with the attached Order, it is hereby ORDERED that
> the 16 Defendants' Motion to Dismiss or in the Alternative to Transfer Venue
> is GRANTED IN PART AND DENIED IN PART. The motion is
> GRANTED to the extent that the defendants seek the transfer of this case to
> the United States District Court for the Eastern District of Virginia. The
> motion is DENIED in all other respects. It is further ORDERED that the
> Clerk of the Court shall forthwith TERMINATE all remaining deadlines in
> this case and TRANSFER the case file to the United States District Court for
> the Eastern District of Virginia. It is further ORDERED that the Clerk of the
> Court shall forthwith mail a copy of this Order to the plaintiff's address on
> record. It is further ORDERED that this case is CLOSED.

Dkt. 21.

Two days later, on November 9, 2023, the district court for the District of

Columbia, Hon. Judge Reggie Walton presiding, transferred the case to the Eastern

District of Virginia, Alexandria division, via extraction. Dkt. 22. The case in the

district court for the  Eastern District of Virginia, Alexandria was assigned to Hon.

Judge Leonie Brinkema. On November 13, Judge Brinkema issued an order *sua

sponte*, "ORDERED that the defendants' Motion to Dismiss [Dkt. 16] will be

resolved on the papers and further briefing from the parties is not necessary". Dkt

23 (case No. 1:23-cv-01525). On Tuesday, December 12, 2023, Petitioner filed the

6

instant petition for a writ of mandamus with the Court seeking to compel vacatur of the district court's order transferring the underlying case to the Eastern District of Virginia.

A petitioner seeking mandamus must show his "right to issuance of the writ is clear and indisputable" and that "no other adequate means to attain the relief exist[s]." *In re: Sealed Case*, 151 F.3d 1059, 1063 (D.C.Cir.1998) (quotations omitted). Before considering whether mandamus relief is appropriate, however, the Court must be certain of their jurisdiction. *See In re: Executive Office of the President*, 215 F.3d 20, 25 (D.C. Cir. 2000) (dismissing mandamus petition because jurisdiction lacking). Because Stewart's case was incorrectly and prematurely transferred to the Eastern District of Virginia, the U.S. Court of Appeals for the District of Columbia Circuit has jurisdiction over the instant petition for mandamus relief.

In *In re: Sosa*, 712 F.2d 1479 (D.C. Cir. 1983), Ramon Sosa petitioned for a writ of mandamus to compel vacatur of the district court's order transferring his underlying case to the Western District of Oklahoma. On March 11, 1983 the district court ordered Sosa to show cause why his complaint should not be transferred and ordered the transfer to the Oklahoma district court one week later; on April 25 the record was physically transferred by court order. Sosa filed his petition for mandamus relief six weeks thereafter. We dismissed the petition for

7

lack of jurisdiction because the "physical transfer of the original papers" in the case to a permissible transferee forum deprived us of jurisdiction to review the transfer. *Id*. at 1480. Sosa sought vacatur of the D.C. district court order of transfer but only the Oklahoma transferee court had jurisdiction once the transfer was effected. *Id*.; *see also Starnes*, 512 F.2d at 924 ("[P]hysical transfer of the original papers in a case to a permissible transferee forum deprives the transferor circuit of jurisdiction to review the transfer.").

However, the Sosa rule is subject to one exception. In *In re: Briscoe*, 976 F.2d 1425 (D.C. Cir. 1992), the Court noted that where there was a "substantial issue whether the district court had power to order the transfer, we will not consider the clerk's compliance with the order as destroying our jurisdiction." *Id*. at 1427 (internal quotation omitted). Seeking to come within the *Briscoe* exception, Stewart makes three compelling arguments that the district court was without authority to transfer his case; all have merit.

## II. STANDARD OF REVIEW

For a court to grant a writ of mandamus, three conditions must be met: the petitioner must demonstrate that his right to issuance of the writ is clear and indisputable, the party seeking issuance of the writ must have no other adequate means to attain the relief he desires, and the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the

8

circumstances. Cheney v. United States Dist. Ct., 542 U.S. 367, 380 (2004). At the same time, the Court keeps in mind that "[m]andamus is a drastic and extraordinary remedy reserved for really extraordinary causes." Cheney, 542 U.S. at 380. This circuit has frequently exercised its mandamus jurisdiction to vacate transfer orders, especially where the transfer was beyond the district court's power, as petitioner alleges here. See, e.g., Ukiah Adventist Hosp. v. FTC, 981 F.2d 543, 548 (D.C. Cir. 1992); In re: Briscoe, 976 F.2d 1425, 1427 (D.C. Cir. 1992); In re: Scott, 709 F.2d 717, 719 (D.C. Cir. 1983). The writ is available not only to "confin[e] 'an inferior court to a lawful exercise of its prescribed jurisdiction' " . In re Halkin, 598 F.2d 176, 198 (D.C. Cir. 1979) (quoting Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26 (1943)), but also "to prevent abuses of a district court's authority to transfer a case." Ukiah, 981 F.2d at 548 (quoting In re Chatman–Bey, 718 F.2d 484, 486 (D.C. Cir. 1983)). Mandamus vacating the transfer order and keeping the matter in this circuit would, moreover, be "in aid of" the Court's jurisdiction, thus fitting neatly within the language of the All Writs Act, 28 U.S.C. § 1651(a). Since petitioner is proceeding *Pro* se, his pleadings must be construed liberally in a light most favorable to the Petitioner.

9

## III. ARGUMENT

### A.    The District Court's Transfer Failed To Comply With The Procedural Rule Set Out In *Starnes*

Stewart's first argument—that the district court's transfer failed to comply with the procedural rule set out in *Starnes*, 512 F.2d at 934–35, recommending a twenty-day delay between the transfer order and the physical transfer of a case—has merit, since the electronic transfer occurred on November 9, 2023, just two days after the district court's November 7, 2023 order granting in part the Respondents' motion to transfer the case. Reading Stewart's *pro se* pleadings liberally, Stewart raises a "substantial issue" regarding the district court's transfer power. The *Starnes* rule was adopted in order to "allow the [transferring] judge to consider any late-arriving briefs in opposition to the transfer which may have been delayed by inefficiencies in the [prison] mail services." *Starnes*, 512 F.2d at 934–35; *see also Briscoe*, 976 F.2d at 1427 (transfer before *Starnes* twenty-day period runs "ordinarily would deprive [the court] of jurisdiction") (emphasis added); cf. *In re Nine Mile Ltd.*, 673 F.2d 242, 243 (8th Cir.1982) (mandamus relief granted to petitioner in diversity case seeking review of transfer because transfer effected on same day as transfer order; "physical transfer of the file should be delayed for a period of time after entry of the transfer order so that review may be sought in the transferor circuit") (citing *Starnes*).

10

*Starnes* applies to the pleadings on non-prisoner *pro se* litigants and thus applies to the underlying proceedings since Stewart is a non-prisoner *pro se* litigant.  In *Stewart v. Raimondo*, District Court for D.C. Case No. 1:18-cv-00130 ("Stewart I"), Hon. Judge Trevor McFadden, after granting the defendants' joint motion to transfer on October 12, 2018, waited exactly 20 calendar days before electronically transferring the case to the Eastern District of Virginia on November 1, 2018. Judge McFadden's delay is in alignment with *Starnes* and *Nine Mile Ltd.;* by waiting the mandated 20 days, Stewart was given due process of a reasonable delay for a period of time so that review may be sought in the transferor circuit. But for Stewart not being given said reasonable time of a twenty-day delay, he would have filed his Petition for a Writ of Mandamus and Motion for an Emergency Stay of the Proceedings Below on or before November 27, 2023, within the twenty-day period for doing so.

In fact, on November 8, 2023 transfer by electronic extraction,  Stewart met and conferred via email with Brian J. Levy, counsel for the Defendants, seeking consent or objection to the granting of a motion for a request for reconsideration of the order transferring the case and a stay of the proceedings while the motion is considered, which was objected to.  A reasonable inference can be made that the motion to stay was to halt the clock on the twenty-day time period pending resolution of the motion for reconsideration, after which Stewart would have moved for a Petition for a Writ of Mandamus in this Court within the applicable

time period. In addition, on November 8, 2023, Petitioner made an expedited request for a transcript of the oral argument from the court reporter assigned to the matter, to be delivered in 7 days or less. These actions give strong weight to Petitioner's contention that but for the District Court's premature transfer, he intended to file a Petition for a Writ of Mandamus within the twenty day period for doing so. Accordingly, for the reasons cited in this section, and because Judge Walton transferred the case only 2 days after the transfer order was issued, the Court has jurisdiction to rule on the merits of the Petition and the motion for an emergency stay of the proceedings below in both district courts pending the outcome of the Petition.

**B. Petitioner's right to issuance of the writ is clear and undisputable based on the Statutes of Large, which 35 U.S.C. 1 is merely *prima facie* evidence and take precedent over**

The district court rested its conclusion largely on the text of 35 U.S.C. 1(a)-(b), which states:

> (a) Establishment.—
>
> The United States Patent and Trademark Office is established as an agency of the United States, within the Department of Commerce. In carrying out its functions, the United States Patent and Trademark Office shall be subject to the policy direction of the Secretary of Commerce, but otherwise shall retain responsibility for decisions regarding the management and administration of its operations and shall exercise independent control of its budget allocations and expenditures, personnel decisions and processes, procurements, and

12

> other administrative and management functions in accordance with this title and applicable provisions of law. Those operations designed to grant and issue patents and those operations which are designed to facilitate the registration of trademarks shall be treated as separate operating units within the Office.
>
> (b) Offices.—
>
> The United States Patent and Trademark Office shall maintain its principal office in the metropolitan Washington, D.C., area, for the service of process and papers and for the purpose of carrying out its functions. The United States Patent and Trademark Office shall be deemed, for purposes of venue in civil actions, to be a resident of the district in which its principal office is located, except where jurisdiction is otherwise provided by law. The United States Patent and Trademark Office may establish satellite offices in such other places in the United States as it considers necessary and appropriate in the conduct of its business.

In the transcript of the decision made during oral argument, Judge Walton stated,

> This matter is before me on a motion to dismiss or, as an alternative, to transfer the case to the Eastern District of Virginia based upon the D.C. District Court, this court, for allegedly being an improper venue.
>
> Mr. Stewart, you had litigation previously involving the people who were involved -- related to your termination. In connection with that case, Judge McFadden concluded that the appropriate venue for the litigation of that matter was in the Eastern District of Virginia. Why should I reach a different decision here?
>
> Tr. p. 2, 8-18.

To which Mr. Stewart replied:

> I guess, Your Honor -- thank you, Judge Walton. This case, in the instant action, involves changing the omission and acts involving policy that is emanating from the Department of Commerce. The previous action was just a Title VII MSPB-related appeal of a dismissal of removal. This is actual

13

discrimination based on a non-selection that goes at the very heart of the matter, which is the lack of oversight of these policies that include a workplace policy, the reinstatement policy, the Schedule A, the hiring for qualified individuals with disabilities policy that the Department of Commerce actually has control over. Because of the lack of control, lack of oversight, I have the right to bring this case into the D.C. jurisdiction because Commerce is here in D.C., and this is where the oversight comes out of it. That lack of oversight is shown by the very fact that several decisions that the PTO has made in these re-hiring analysis policies where they, basically, act as the de facto -- ban and bar act as a de facto debarment from federal government without the approval of OPM; that's another agency that's located here in Washington, D.C. Without the approval of OPM, the patent office had no authority to debar employees from ever applying for federal jobs, whether it's at the patent office or anywhere else; and de facto -- that's exactly what it does. It creates a segregation policy where, if a manager doesn't like you, once they put you on ban and bar list, they can make a false allegation that you are a security threat. They go through the process of removing you, even with—when there is evidence of a security guard, such as in my position, who is right there seeing what is going on, saying Mr. Stewart's body language is nonviolent—and it, basically, goes up the chain. Everybody looks the other way, and nobody does anything to change the policy. No approval by OPM, no oversight by Commerce. But that's why this case is different from the previous case.

Tr. p. 2, 19 - p. 4, 16.

Judge Walton then replied:

I guess the difficulty I am having with your position is -- Title 35 in the U.S. Code Section 1(a) specifically indicates that the PTO is independent of the Department of Commerce as it relates specifically to the issue of personnel decisions and processes. So I don't know how I am able to get around that determination made by Congress that the PTO, as it relates to employment decisions, is independent -- or independently makes those decisions independent of the department. But I will hear from government counsel.

Tr. p. 2, 19 - p. 4, 16.

14

Agency counsel Brian J. Levy then stated:

Thank you, Your Honor. Yes. I think that previous decisions in the previous case is -- you know, I wonder why I didn't argue issue preclusion. And on top of that, the authorities decided -- including Your Honor's 2006 *Varma* decision, the cases in which this strategy has been tried has been rejected, and I see no reason to distinguish this case.

Tr. p. 4, 18-23.

Without allowing for an opportunity for rebuttal from Stewart, the district

concluded:

Well, the reality that the alleged wrongful act, i.e., the decision not to hire Mr. Stewart was made by the PTO, and that occurred at its location in Virginia. The records that would relate to that decision also would be housed at the PTO, which is located in Virginia. Also, if Mr. Stewart had been hired, he would have worked at the location in Virginia and, as I understand, Mr. Stewart also resides in Virginia.

Despite your argument, Mr. Stewart, I just don't see how I avoid prior decisions that indicate that employment decisions made by the PTO are decisions that have to be addressed in the Eastern District of Virginia if a lawsuit is brought in reference to the actions of the PTO. And since we are talking about a decision not to hire, which is an employment decision, I would have to conclude that the appropriate venue is, in fact, the Eastern District of Virginia.

The government does ask that I dismiss, but I think the appropriate venue to decide how substantively on the merits the case should be resolved is, in fact, the court out in Virginia.

I will deny the motion to dismiss, but I will transfer the case to the Eastern District of Virginia as the appropriate venue for the litigation in this case.

Tr. p. 4, 24 - p. 5, 22.

15

Here, the district court's blind reliance Title 35 U.S.C. 1(a) is trumped by conflicting and *prima facie* evidence of the actual law located in the Statutes at Large, 66 Stat. Public Law 593, HR 792-794 (July 19, 1952), which states in part:

> § 1. Establishment The Patent Office shall continue as an office in the Department of Commerce, where records, books, drawings, specifications, and other papers and things pertaining to patents and to trademark registrations shall be kept and preserved, except as otherwise provided by law…
>
> § 3. Officers and employees A Commissioner of Patents, one first assistant commissioner, two assistant commissioners, and nine examiners-in-chief, shall be appointed by the President, by and with the advice and consent of the Senate. The assistant commissioners shall perform the duties pertaining to the office of commissioner assigned to them by the Commissioner. The first assistant commissioner, or, in the event of a vacancy in that office, the assistant commissioner senior in date of appointment, shall fill the office of Commissioner during a vacancy in that office until a Commissioner is appointed and takes office.      The Secretary of Commerce, upon the nomination of the Commissioner in accordance with law, shall appoint all other officers and employees. ***The Secretary of Commerce may vest in himself the functions of the Patent Office and its officers and employees specified in this title and may from time to time authorize their performance by any other officer or employee.***
>
> § 6. Duties of Commissioner. **The Commissioner, under the direction of the Secretary of Commerce**, shall superintend or perform all duties required by law respecting the granting and issuing of patents and the registration of trademarks; and he shall have charge of property belonging to the Patent Office. He may, ***subject to the approval of the Secretary of Commerce, establish regulations, not inconsistent with law, for the conduct of proceedings in the Patent Office***. (Emphasis added)

16

When there is a conflict between the United States Statutes at Large and the United States Code, the Statutes at Large generally take precedence. The United States Statutes at Large is the official source for the laws and resolutions passed by Congress, providing the exact wording of the statutes as enacted. The United States Code, on the other hand, is a compilation and codification of the general and permanent laws of the United States, organized by subject matter.

The United States Code is a secondary source that organizes statutes by subject, removes obsolete or superseded laws, and presents the laws in a more accessible and user-friendly format. It may include editorial revisions for clarity and consistency. Courts have recognized the primacy of the Statutes at Large when determining the text of a law. If there is a conflict between the two, courts typically refer to the Statutes at Large to ascertain the exact language and meaning of the statute. The United States Code is considered *prima facie* evidence of the laws it contains, but it explicitly defers to the Statutes at Large in case of any discrepancy.

Here, where there is a huge discrepancy in the actual text and thus textual meaning of the law between Statutes at Large, 66 Stat. Public Law 593 HR 792-794 and 35 U.S.C. 1, the Statutes at Large takes precedence in determining what the actual law is. The original enactment, dated July 19, 1952, under 66 Stat., established the Patent Office as an office within the Department of Commerce. Section 3 of the statute outlined the appointment process for key officials, explicitly stating that the Secretary of Commerce, upon the nomination of the

17

Commissioner, would appoint all other officers and employees. Furthermore, the Secretary of Commerce was granted the authority to vest in himself the functions of the Patent Office and its officers and employees, as specified in the title. Section 6 of the statute, which delineates the duties of the Commissioner, is particularly noteworthy. It emphasizes that the Commissioner, while under the direction of the Secretary of Commerce, shall superintend or perform all duties required by law regarding the granting and issuing of patents and the registration of trademarks. Importantly, the Commissioner is granted the authority to establish regulations for the conduct of proceedings in the Patent Office, subject to the approval of the Secretary of Commerce.  Thus, the law clearly vests not only authority but also control and approval of the Patent Office's functions and regulations in the Secretary of Commerce. Here, functions should be construed broadly to includes operations in its definition, which would include personnel matters and policies related to those functions.

Furthermore, the legislative history of 35 U.S.C 1 shows that Congress was aware that USPTO at all times was a subordinate agency in the Executive branch and that the revised statutes were meticulously compiled and reviewed in creating 66 Stat. Public Law 593:

The bill would codify the patent laws of the United States...

This legislation is another step in codification of the United States Code and will enact into law title 35 of the United States Code entitled "Patents." This legislation has been in the process of study and consideration for a number

18

of years. It has passed the House and has reached the Senate after lengthy hearings on the House side. The bill has the general approval of all parties concerned and represents a step forward in the codification of our laws, for it brings together in one package all of the laws relating to patents that were contained in the revised statutes of 1874 down to the present time. The bill is divided into three categories, the first being entitled "Patents" and deals with its functions; part 2 is titled the "Patentability of Inventions and Grant of Powers," and part 3 is titled "Patents and Protection of Patent Rights." Into these three categories the existing laws relating to patents have been codified. In view of decisions of the Supreme Court and others as well as trial by practice and error there have been some changes in the law of patents as it now exists and some new terminology used. All these matters, as stated before have been carefully gone over in hearings and the bill as it is now presented to the Senate represents, in the opinion of the committee, legislation of merit. The committee therefore recommends that this legislation be speedily passed...

In as much as title 5 has not been codified and the Patent Office is the proper agency for handling both patents and trade-marks, it is considered that part I is properly in H.R. 7794 at this time.  If it is desired to transfer, the Patent Office, to title 5 which deals with executive agencies, that matter could be properly taken care of when title 5 is offered for codification. It would seem to leave the setting up of the Patent Office out of title 35 at this time would be to leave a portion of the patent law uncodified.

Cong. Rec., Senate, July 4, 1952, p. 9323.

Indeed, Section 6 of the 66 Revised Statutes is crucial in establishing the Commissioner's (now known as the UnderSecretary of Commerce for Patents/ Director of USPTO) role in the Patent Office. The provision not only underscores the Commissioner's responsibilities but also highlights the prerequisite of securing the approval of the Secretary of Commerce for the establishment of regulations, ensuring compliance with the broader policies of the Department.

19

Therefore, since the actual law does show that the Secretary of Commerce has approval authority of all proceedings related to the functions of the Patent Office, including policy matters related to the hiring and firing of Patent Examiners, Petitioner's right to issuance of the writ of mandamus vacating the transfer order is clear and undisputable. This is because the cited portion of the Statutes of Large, which 35 U.S.C. 1 is merely *prima facie* evidence of and does not take precedent over, shows that the case should not have been transferred since jurisdiction of the district court over the Amended Complaint was clearly established.   This is because the amended complaint alleges the Secretary of Commerce's failure to review and approve USPTO's policies related to hiring and disciplining of patent examiners, policies that are subject to the Secretary's oversight, meaning approval and control of, effectuated Petitioner's non-selection.

## C. Petitioner hase no other adequate means to attain the relief he desires.

By transferring the case to the Eastern District of Virginia, the district court essentially removed the Secretary of Commerce as a party to the suit, since the Eastern District of Virginia does not have jurisdiction over the Secretary in any capacity and thus cannot find the Department of Commerce liable for discrimination based on its failure to exercise its statutorily vested control over and approval of USPTO's hiring and disciplinary policies which effectuated Stewart's non-selection. Petitioner, in his Amended Complaint, requests injunctive relief (in

20

the form of a writ of mandamus), ordering Defendant Fennema to cease and desist from engaging in any further discriminatory treatment or retaliation against Plaintiff, and ordering the USPTO to adopt policies and procedures to prevent similar discrimination and retaliation in the future. In addition, the lawsuit is intended to hold accountable Commerce for its omissions which allowed these discriminations and retaliations by the USPTO officials to occur while on its watch, for adjudication of his Title VII through declarative and similar injunctive relief, including an order directing Commerce to direct all hiring officials at USPTO to take policy classes or otherwise training in policy and reviewing of the USPTO'S Banned & Barred policy and the rehire analysis policy in order to bring them into compliance with all applicable laws or to eliminate them if impracticable. See Am. Cmplt., ¶¶ 19-25, 237; pp.72-73.

Thus, an order from the District Court ordering USPTO to take make changes to the alleged discriminatory policies is not an adequate means to obtain the relief he desires because USPTO would still not be subject to the continuous oversight and control and approval power of the Secretary of Commerce as mandated by law and could operate in perpetuity on its own accord and in noncompliance with the law.   The Eastern District Court does not possess the power of continuous oversight and approval of USPTO's policies and the Secretary of Commerce is best situated to take on that role in order to ensure USPTO becomes and remains in compliance with all applicable laws and that its personnel

policies are brought into alignment with Commerce's policies or changed and eliminated to effectuate the nondiscriminatory employee hiring and disciplinary practices in the future. Indeed, the type of relief and oversight that the Eastern District would have to exert over the Patent office would more than likely create a constitutional crisis which can be averted by vacating the transfer order, so that if found liable, the Secretary of Commerce can be ordered to do her legally mandated job of oversight she has been statutorily vested with.

### D. **The Writ is Appropriate Under All Circumstances**

In addition to the points raised herein, it is imperative to note that the issue regarding the Secretary of Commerce's approval of the USPTO Director's authority would have been expounded upon during the rebuttal phase of the oral argument by Petitioner. Unfortunately, the district court, in its proceedings, did not afford the Petitioner the opportunity for rebuttal. The omission of this critical aspect in the previous sections is not a product of oversight but a consequence of the procedural limitations imposed during the proceedings. Mr. Stewart was made to present his argument for denial of the Defendants' motion even though the normal order would have been for Attorney Brian J. Levy to present his argument first and then followed by Petitioner's response.   Since Petitioner went first, he had the right to rebuttal the Agency's argument but was not afforded the due process in which to do so, as the order granting the Agency's motion came immediately after Mr. Levy stopped speaking as shown in the transcript of the proceedings. Nonetheless, the

Commerce. In conclusion, *Varma v. Gutierrez* is distinguishable, as it involved employment discrimination claims without detailed policy disputes. The reliance on *Varma* by the Respondents and the district court overlooks the unique nature of the petitioner's arguments centered around policy discrepancies and Commerce's alleged failure to rectify them.

## IV. Conclusion

**WHEREFORE**, the Petitioner prays the Court rule in his favor by granting his petition for a writ of mandamus, vacating the lower court's order transferring the case to the Eastern District of Virginia, and finding that the District court for the District of Columbia is the appropriate venue for the adjudication of these matters, and remanding the case for further proceedings. In addition, in the interim, Petitioner seeks an emergency order to be issued to the district courts for the Eastern District of Virginia and the District of Columbia staying the below proceedings until the Court no longer has jurisdiction over these matters.

Respectfully submitted on this 13th day of December, 2023,

/s/

Fenyang Stewart
Appellant
6040 Richmond Hwy
Apt 707
Alexandria, VA 22303
(757) 506-4579
fstewart2@gmail.com

24

**\*\*\*\*\*\*\*\*\*CERTIFICATE OF SERVICE AND CERTIFICATE\*\*\*\*\*\*\*\*\***

I certify under penalty of perjury that on 12/13/2023 I filed this petition for a Writ of Mandamus by hand with the clerk of Court, and submitted a copy of the same to Judge Reggie Walton and Judge Leonie Brinkema by hand via the clerk of court for the district court for the District of Columbia and the Eastern District of Virginia, Alexandria division, respectively, and submitted a copy of the same by email to Brian  J. Levy, at brian.levy2@usdoj.gov, counsel for the defendants, who previously consented to electronic service, and that all statements in the foregoing motion are true to the best of my knowledge, information, and belief, and that the length and font of the Petition are within requirements set by the Court's local rules.

/s/
Fenyang Stewart
Appellant , pro se
6040 Richmond Hwy
Apt 707
Alexandria, VA 22303
(757) 506-4579
fstewart2@gmail.com

DATED: December 13, 2023