UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

DEC 2 2 2023

RECEIVED

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA

In Re: Fenyang Stewart,

*Petitioner*

## EMERGENCY MOTION FOR A
## STAY OF THE PROCEEDINGS BELOW

Fenyang Stewart
Petitioner, *pro se*
6040 Richmond Hwy Apt 707
Alexandria, VA 22312
(757) 506-4579
fstewart2@gmail.com

DATED:  December 22, 2023

# TABLE OF AUTHORITIES

Page(s)

Cases

*In re: Briscoe,*

976 F.2d.................................................................................5

*In re: Nine Mile Ltd.,*

673 F.2d 242 (8th Cir.1982)...........................................5

*Nken v. Holder,*

556 U.S. 418 (2009)........................................................4

*Starnes v. McGuire,*

512 F.2d 918 (D.C. Cir. 1974)........................................5

*Ukiah Adventist Hospital v. FTC,*

981 F.2d 543 (D.C. Cir. 1992)........................................10


**Statutes**

35 U.S.C. 1...............................................................7, 8

Title 35 U.S.C. 1(a)..............................................1, 5, 11


**Other Authorities**

HR 792-794............................................................2, 7, 8, 11

Public Law 593.......................................................2, 7, 8, 11

## I. INTRODUCTION

**Comes Now,** Petitioner Fenyang Stewart, proceeding *pro se*, urgently brings forth this Emergency Motion for a Stay of Proceedings against Respondents Gina M. Raimondo, et al., seeking the Court's immediate attention to a critical conflict of laws that profoundly impacts the ongoing venue determination. The essence of this matter revolves around the district court's reliance on Title 35 U.S.C. 1(a) and Petitioner's steadfast assertion that the United States Statutes at Large, particularly 66 Stat. Public Law 593 HR 792-794 (July 19, 1952), takes precedence in determining the venue for this case. The decision of the district court to transfer the case prematurely to the Eastern District of Virginia based Respondent's motion to dismiss for improper venue was incorrect and premature, and thus reversible due to abuse of discretion. The transferee court, any day now, could rule on the Respondents' pending motion to dismiss prior to the Court deciding whether to grant the instant Petition. If that occurs, Petitioner would lose his right to relief against Commerce for the lack of policy oversight and direction which effectuated his discriminatory non-selection by the Patent Office. Moreover, the opportunity for the lower court to mandate that Commerce review and amend, and if necessary, abolish the discriminatory policies at issue, would disappear and thus effect thousand of Patent Examiners who have been or may be subjected to said policies. For the following reasons and in order to prevent a manifest injustice, the Court should grant the emergency stay forthwith.

1

## II. PROCEDURAL HISTORY

On January 19, 2023, Fenyang Stewart ("Petitioner"), proceeding *pro se*, filed a complaint in the U.S. District Court for the District of Columbia against Gina M. Raimondo, in her official capacity as the Secretary of the U.S. Department of Commerce (Commerce), and Robert Fennema ("Fennema") a Federal employee at the U.S. Patent & Trademark Office ("USPTO"), in his individual capacity (collectively, "Respondents"). (D.C. District Court, 1:23-cv-00149-RBW, Dkt. No. 1) On May 3, 2023, Petitioner filed an amended complaint. (Dkt. No. 11).

In the amended complaint, Petitioner alleges his non-selection as a Patent Examiner on or around May 2021 was a result of the combination of Fennema's retaliatory statements made to the Selecting Official and Commerce's lack of oversight and failure to bring USPTO's policies on hiring and rehiring, reinstatement, Schedule A, and workplace violence policy into alignment with it's own policies of the same name, and its failure to specifically modify and/or eliminate USPTO's Ban & Bar policy and Rehire Analysis policy, which are alleged to be discriminatory on the basis of race, disability, and prior protected EEO activity. *See Am. Complt.*, ¶¶ 78-104. In the amended complaint, Stewart alleged Respondent Fennema, sued in his individual and official capacities, as a Supervisory Patent Examiner working for the Department of Commerce component the U.S. Patent and Trademark Office and is a resident of Burke, VA.

2

Stewart further alleged in the amended complaint that Commerce's principal office is located in Washington, D.C.

On June 13, 2021, Respondents jointly moved the district court to transfer the case to the Eastern District of Virginia for lack of venue and to dismiss the complaint for failure to state a claim upon which relief can be granted, or, in the alternative, for improper venue. On November 7, 2023, the district court held oral argument on the motion telephonically with the parties and orally granted the Repsondents' motion to tranfer.  Two days later, on November 9, 2023, the district court for the District of Columbia, Hon. Judge Reggie Walton presiding, transferred the case to the Eastern District of Virginia, Alexandria division, via extraction. Dkt. 22. The case in the district court for the  Eastern District of Virginia, Alexandria was assigned to Hon. Judge Leonie Brinkema. On November 13, Judge Brinkema issued an order *sua sponte*, "ORDERED that the defendants' Motion to Dismiss [Dkt. 16] will be resolved on the papers and further briefing from the parties is not necessary". Dkt 23 (case No. 1:23-cv-01525). On Tuesday, December 12, 2023, Petitioner filed the instant petition for a writ of mandamus with the Court seeking to compel vacatur of the district court's order transferring the underlying case to the Eastern District of Virginia.  As of the date of this filing, the Eastern District Court Judge. Hon. Leonie Brinkema, has not ruled on the Respondents' joint motion to dismiss.

## III. LEGAL STANDARD

The petitioner relies on the well-established principle articulated in *Nken v. Holder*, 556 U.S. 418, 433 (2009), which holds that an emergency stay is appropriate when there is a likelihood of success on the merits, irreparable harm, no substantial harm to other parties, and the public interest favors granting the stay. This principle is particularly relevant to pro se litigants seeking equitable relief.

## IV. ARGUMENT

### A. Petitioner Has a Likelihood of Success on the Merits

As a preliminary matter, Petitioner pointed out that this Court has jurisdiction over the instant Petition due to the lower court's premature transfer of the case to the Eastern District of Virginia only two days after the order granting the Respondents' motion to dismiss for improper venue was issued. *See Starnes v. McGuire*, 512 F.2d 918, 934–35 (D.C. Cir. 1974) (recommending a twenty-day delay between a transfer order and the physical transfer of a case); *See also In re: Briscoe*, 976 F.2d at 1427 (transfer before *Starnes* twenty-day period runs "ordinarily would deprive [the transferee court] of jurisdiction"); *See also In re: Nine Mile Ltd.*, 673 F.2d 242, 243 (8th Cir.1982) (mandamus relief granted to petitioner in diversity case seeking review of transfer because transfer effected on same day as transfer order; "physical transfer of the file should be delayed for a period of time after entry of the transfer order so that review may be sought in the

4

transferor circuit") (citing Starnes). Since the record shows the transfer order was effectuated only two days after the order was issued, the Court should find that it has jurisdiction over the instant Petition and instant Emergency motion.

The district court rested its conclusion to transfer the case on a misinterpretation of of 35 U.S.C. 1(a), which states:

(a) Establishment.—

The United States Patent and Trademark Office is established as an agency of the United States, within the Department of Commerce. In carrying out its functions, the United States Patent and Trademark Office shall be subject to the policy direction of the Secretary of Commerce, but otherwise shall retain responsibility for decisions regarding the management and administration of its operations and shall exercise independent control of its budget allocations and expenditures, personnel decisions and processes, procurements, and other administrative and management functions in accordance with this title and applicable provisions of law. Those operations designed to grant and issue patents and those operations which are designed to facilitate the registration of trademarks shall be treated as separate operating units within the Office.

Petitioner argued at oral argument and in his Amended Complaint that his non-selection as a Patent Examiner was effectuated by Commerce's failure to subject the Patent Office to the policy direction of the Secretary of Commerce. Specifically, Petitioner argued Commerce's failure to provide oversight and correction of USPTO's hiring policy, workplace violence policy, the reinstatement policy, and Schedule A hiring, led to his discriminatory and retaliatory non-selection. The district court, Hon. Judge Reggie Walton, based his ruling on the portion of the law that states in part that "otherwise[, USPTO] shall retain

5

responsibility for decisions regarding the management and administration of its operations and shall exercise independent control of its budget allocations and expenditures, personnel decisions and processes." A reasonable inference can be made that Stewart alleged that Commerce's policy oversight authority and USPTO's independent control of its personnel decisions and processes are not mutually exclusive while Judge Walton ruled that they are. Thus, Petitioner argued via reasonable inference that the overlap of Commerce's policy direction and USPTO's personnel decisions distinguished his Amended Complaint from the court's prior decisions and gave the court jurisdiction over his Amended Complaint.    Here, a reasonable inference can be made that since the word "otherwise" in the statute at issue means "in circumstances different than those currently present", that Commerce's of USPTO policies that USPTO bases its personnel decisions are subject to Commerce's control and authority over, and thus the two are not mutually exclusive. Accordingly, it was an abuse of discretion for the lower court to grant Respondents' motion to dismiss for improper venue. See Transcript, pp. 3-5.

Not only that, in his Petition for a Writ of Mandamus, Petitioner did a deep dive into the legislative history of 35 U.S.C. 1 and made the compelling discovery that the Statutes at Large, which 35 U.S.C. 1 is only *prima facie* evidence of, takes precedence over 35 U.S.C. 1 and explicitly states that the Patent Office's functions

are subject to the approval by the Secretary of Commerce. See Stat. Public Law

593, HR 792-794 (July 19, 1952), which states in part:

> …The Secretary of Commerce may vest in himself the functions of the Patent Office and its officers and employees specified in this title and may from time to time authorize their performance by any other officer or employee.

> § 6. Duties of Commissioner. The Commissioner, under the direction of the Secretary of Commerce, shall superintend or perform all duties required by law respecting the granting and issuing of patents and the registration of trademarks; and he shall have charge of property belonging to the Patent Office. He may, subject to the approval of the Secretary of Commerce, establish regulations, not inconsistent with law, for the conduct of proceedings in the Patent Office. (Emphasis added*See Petition*, pp. 16-20.

Since regulations established for the conduct of proceedings in the Patent Office

cover disciplinary actions and procedures for the hiring of personnel, its clear that

the actual law establishing the Patent Office also establishes the jurisdiction of the

District Court for the District of the District of Columbia over these matters since

the Secretary of Commerce resides in Washington, D.C.   Accordingly, this Court

should rule, as a matter of first impression in a published decision, that 66 Stat.

Public Law 593 HR 792-794 (July 19, 1952), take precedence over 35 U.S.C. 1

and establishes the transferor court's jurisdiction over the Amended Complaint, and

thus Petitioner has established a likelihood of success on the merits of his Petition

for a Writ of Mandamus.

**B. Petitioner will suffer irreparable harm if the Motion is not Granted.**

The transfer denies Stewart his Constitutional right to due process by not affording him the opportunity for meaningful redress. Stewart asserts that the Eastern District of Virginia lacks jurisdiction over the Secretary of Commerce, a critical party in the case. Without the ability to bring Commerce to the Eastern District, Stewart is denied a fair and impartial hearing, violating his fundamental right to due process.

The transfer also disrupts Stewart's ability to present his case effectively. By relocating the case, Stewart loses control over the proceedings and the opportunity to demonstrate the Secretary of Commerce's role in overseeing and approving USPTO policies. This loss of control impedes his ability to seek justice for alleged discrimination and retaliation, causing irreparable harm to his individual rights.

Stewart will suffer irreparable harm due to the monetary and psychological costs involved in bringing this matter of public concern to the court for relief. Stewart paid 600 dollars for the the writ of mandamus petition to be filed on December 22, 2023, and has also suffered emotional distress due to the discriminatory non-selection which can only be remedied by holding Commerce accountable due to its lack of oversight. The alleged discriminatory and retaliatory policies at the USPTO, if left unaddressed, will have a disparate impact on Stewart by preventing him from receiving justice in the form of mandamus relief and

8

declamatory relief and compensatory damages for discrimination and retaliation on the basis of race (Black) disability, and his prior Protected EEO activity.

## C. There is No Substantial Harm to Other Parties

Stewart asserts that granting the emergency stay and retaining jurisdiction in the District of Columbia causes no potential harm to other parties involved. In fact, maintaining the case in the District of Columbia ensures fairness and justice without causing any undue prejudice or harm to the Respondents. First, there is no indication that the Respondents would suffer prejudice or harm if the emergency stay is granted. The stay merely preserves the status quo and allows the District of Columbia to adjudicate the case properly. This aligns with the principles of fairness and does not infringe on the Respondents' rights or interests. Second, allowing the Eastern District of Virginia to proceed would potentially lead to unnecessary delays and duplication of proceedings. A stay issued to both lower court prevents such inefficiencies by avoiding parallel proceedings in two different jurisdictions. This not only benefits the Petitioner but also ensures judicial economy. Finally, Staying the case in the District of Columbia is consistent with principles of due process and fairness. It allows for a comprehensive examination of the issues, ensuring that all parties are heard, and justice is served without causing any harm to the Respondents.

9

For a case on point on this issue, Stewart relies on the decision in *Ukiah Adventist Hospital v. FTC*, 981 F.2d 543 (D.C. Cir. 1992), where the court emphasized that mandamus relief was granted to petitioners seeking review of transfer orders when it was demonstrated that the transfer was beyond the district court's power. The court underscored the importance of maintaining fairness and avoiding harm to parties involved. Likewise, since the digital file transfer was effectuated by the lower court merely two days after the order granting the Respondents' motion to dismiss for improper venue, the transfer was beyond the court's power. In addition, mandamus relief is warranted based upon the 66 Stat. Public Law 593 HR 792-794 (July 19, 1952), which takes precedence over 35 U.S.C. 1(a) due to the conflict in the actual text of the law in determining the venue for this case, and explicitly grants the Secretary of Commerce approval powers of USPTO functions and regulations, which include personnel matters and policies related to those matters.

In conclusion, based on established case law and the unique circumstances of this case, granting the emergency stay and retaining jurisdiction in the District of Columbia serves the interests of justice and fairness without causing any potential harm to the Respondents.

10

**D. The Public Interest Favors Granting the Stay**

Stewart contends that a ruling in his favor would not only grant relief to himself as an aggrieved party but also to all similarly-situated applicants and/or patent examiners who have faced discrimination and retaliation by setting a precedent to rectifying systemic issues within the USPTO with a decision in his favor against Commerce. The broader implications of the case make it a matter of public concern, warranting the court's attention and intervention through the extraordinary remedy of a writ of mandamus. Given the intricate maze of the EEO administrative process followed by prolonged involvement in Federal court proceedings, it's evident that another *pro se* litigant might struggle to navigate these complexities. Thus, rectifying these policies becomes not only advantageous for Stewart but also a step toward fostering a fair and equitable working environment for all patent examiners both currently and in the foreseeable future that may be otherwise unreachable.

In conclusion, the transfer not only denies Stewart a fair adjudication but also hampers his ability to present a comprehensive case. The resulting harm is irreparable on an individual level, affecting his right to due process and fair treatment in the pursuit of justice, and would leave systemic barriers in place that could effect all patent examiners who are similarly-situated. Accordingly, an emergency stay of the proceedings below in both transferor and transferee courts is warranted to remedy these violations and restore Petitioner's rights.

11

## Conclusion

**WHEREFORE**, the Petitioner prays the Court rule in his favor by granting

his emergency motion for a stay of the proceedings below.  The stay should issued

to the court, Hon. Judge Reggie B. Walton presiding, in case No. 1:23-cv-00149-

RBW in the district court for the District of Columbia and to the court, Hon. Judge

Leonie M. Brinkema presiding, in case No. 1:23-cv-01525-LMB at the district

court for the Eastern District of Virginia, Alexandria Division. The stay should

pause the below proceedings until the Court no longer has jurisdiction over these

matters, all appeals have been exhausted, and after the mandate is issued by this

honorable Court. Also, please take Judicial Notice of the transcript of the

Proceedings of the Oral Argument on the Respondent's motion to dismiss (Dkt.

No. 21, Case No. 1:23-cv-00149-RBW) held on November 7, 2023, submitted by

hand to the clerk of Court for the Court of Appeals for the District of Columbia

Circuit on December 22, 2023.

Respectfully submitted on this 22nd day of December, 2023,

/s/

Fenyang Stewart
Appellant
6040 Richmond Hwy
Apt 707
Alexandria, VA 22303
(757) 506-4579

**\*\*\*\*\*\*\*\*\*CERTIFICATE OF SERVICE AND CERTIFICATE\*\*\*\*\*\*\*\*\***

I certify under penalty of perjury that on 12/23/2023 I filed this foregoing Emergency Motion and separately Transcript of the Oral Argument on the Respondent's motion to dismiss (Dkt. No. 21, Case No. l:23-cv-00149-RBW) held on November 7, 2023, submitted by hand with the clerk of Court for the Court of Appeals for the District of Columbia Circuit, and submitted a copy of the same to Judge Reggie Walton and Judge Leonie Brinkema by hand via the clerk of court for the district court for the District of Columbia and the Eastern District of Virginia, Alexandria division, respectively, and submitted a copy of the same by email to Jane M. Lyons, Assistant U.S. Attorney, and Assistant U.S. Attorney, Brian J. Levy at brian.levy2@usdoj.gov, counsel for the Respondents/Defendants, and that all statements in the foregoing motion are true and correct to the best of my knowledge, information, and belief, and that the length and font of the motion are within the requirements set by the Court's local rules.

/s/

Fenyang Stewart
Appellant
6040 Richmond Hwy
Apt 707
Alexandria, VA 22303
(757) 506-4579
fstewart2@gmail.com


DATE Executed: December 22, 2023

DEC 22 2023

RECEIVED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
FENYANG STEWART,                    )  Civil Action
                                    )  No. 23-149
                                    )
vs.                                 )
                                    )
GINA M. RAIMONDO, et al.            )  November 7, 2023
                                    )  10:09 a.m.
              Defendant.            )  Washington, D.C.
 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF TELEPHONIC MOTION HEARING
BEFORE THE HONORABLE REGGIE B. WALTON,
UNITED STATES DISTRICT COURT SENIOR JUDGE**

<u>APPEARANCES:</u>

FOR THE PLAINTIFF:

                FENYANG STEWART, Pro Se
                6040 Richmond Highway
                Apartment 707
                Alexandria, VA 22303
                (757) 506-4579

FOR THE DEFENDANT:

                BRIAN J. LEVY
                DOJ-USAO
                601 D Street NW
                Washington, DC 20530
                (202) 252-6734
                Email: brian.levy2@usdoj.gov

Court Reporter:    Elizabeth Saint-Loth, RPR, FCRR
                Official Court Reporter

*This hearing was held telephonically and is, therefore,
subject to the limitations associated with audio difficulties
while using technology, i.e., audio feedback, overlapping
speakers, static interference, etc.*

Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

1
2    THE COURTROOM DEPUTY:  This is Civil

3    Action 23-149, Fenyang Stewart versus Gina Raimondo, et al.

4    May I have the parties identify yourselves for the

5    record, please, beginning with the plaintiff.

6    MR. STEWART:  Fenyang Stewart, pro se.

7    MR. LEVY:  Brian Levy, representing the defendant.

8    THE COURT:  This matter is before me on a motion

9    to dismiss or, as an alternative, to transfer the case to

10    the Eastern District of Virginia based upon the D.C.

11    District Court, this court, for allegedly being an improper

12    venue.

13    Mr. Stewart, you had litigation previously

14    involving the people who were involved -- related to your

15    termination.  In connection with that case, Judge McFadden

16    concluded that the appropriate venue for the litigation of

17    that matter was in the Eastern District of Virginia.

18    Why should I reach a different decision here?

19    MR. STEWART:  I guess, Your Honor -- thank you,

20    Judge Walton.

21    This case, in the instant action, involves

22    changing the omission and acts involving policy that is

23    emanating from the Department of Commerce.

24    The previous action was just a Title VII

25    MSPB-related appeal of a dismissal of removal.  This is

```
 1    actual discrimination based on a nonselection that goes at

 2    the very heart of the matter, which is the lack of oversight

 3    of these policies that include a workplace policy, the

 4    reinstatement policy, the Schedule A, the hiring for

 5    qualified individuals with disabilities policy that the

 6    Department of Commerce actually has control over.

 7            Because of the lack of control, lack of oversight,

 8    I have the right to bring this case into the D.C.

 9    jurisdiction because Commerce is here in D.C., and this is

10    where the oversight comes out of it.  That lack of oversight

11    is shown by the very fact that several decisions that the

12    PTO has made in these re-hiring analysis policies where

13    they, basically, act as the de facto -- ban and bar act as a

14    de facto debarment from federal government without the

15    approval of OPM; that's another agency that's located here

16    in Washington, D.C.

17            Without the approval of OPM, the patent office had

18    no authority to debar employees from ever applying for

19    federal jobs, whether it's at the patent office or anywhere

20    else; and de facto -- that's exactly what it does.  It

21    creates a segregation policy where, if a manager doesn't

22    like you, once they put you on ban and bar list, they can

23    make a false allegation that you are a security threat.

24    They go through the process of removing you, even with --

25    when there is evidence of a security guard, such as in my
```

1    position, who is right there seeing what is going on, saying

2    Mr. Stewart's body language is nonviolent -- and it,

3    basically, goes up the chain.  Everybody looks the other

4    way, and nobody does anything to change the policy.  No

5    approval by OPM, no oversight by Commerce.  But that's why

6    this case is different from the previous case.

7            THE COURT:  I guess the difficulty I am having

8    with your position is -- Title 35 in the U.S. Code Section

9    1(a) specifically indicates that the PTO is independent of

10    the Department of Commerce as it relates specifically to the

11    issue of personnel decisions and processes.

12            So I don't know how I am able to get around that

13    determination made by Congress that the PTO, as it relates

14    to employment decisions, is independent -- or independently

15    makes those decisions independent of the department.

16            But I will hear from government counsel.

17            MR. LEVY:  Thank you, Your Honor.

18            Yes.  I think that previous decisions in the

19    previous case is -- you know, I wonder why I didn't argue

20    issue preclusion.  And on top of that, the authorities

21    decided -- including Your Honor's 2006 *Varma* decision, the

22    cases in which this strategy has been tried has been

23    rejected, and I see no reason to distinguish this case.

24            THE COURT:  Well, the reality that the alleged

25    wrongful act, i.e., the decision not to hire Mr. Stewart was

1    made by the PTO, and that occurred at its location in

2    Virginia.  The records that would relate to that decision

3    also would be housed at the PTO, which is located in

4    Virginia.  Also, if Mr. Stewart had been hired, he would

5    have worked at the location in Virginia and, as I

6    understand, Mr. Stewart also resides in Virginia.

7             Despite your argument, Mr. Stewart, I just don't

8    see how I avoid prior decisions that indicate that

9    employment decisions made by the PTO are decisions that have

10   to be addressed in the Eastern District of Virginia if a

11   lawsuit is brought in reference to the actions of the PTO.

12   And since we are talking about a decision not to hire, which

13   is an employment decision, I would have to conclude that the

14   appropriate venue is, in fact, the Eastern District of

15   Virginia.

16            The government does ask that I dismiss, but I

17   think the appropriate venue to decide how substantively on

18   the merits the case should be resolved is, in fact, the

19   court out in Virginia.

20            I will deny the motion to dismiss, but I will

21   transfer the case to the Eastern District of Virginia as the

22   appropriate venue for the litigation in this case.

23            Thank you.

24            MR. STEWART:  Thank you, Your Honor.

25            MR. LEVY:  Thank you, Your Honor.
          (Whereupon, the proceeding concludes, 10:16 a.m.)

6

1                           **CERTIFICATE**

2

3          I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby

4    certify that the foregoing constitutes a true and accurate

5    transcript of my stenographic notes, and is a full, true,

6    and complete transcript of the proceedings to the best of my

7    ability.

8          This certificate shall be considered null and void

9    if the transcript is disassembled and/or photocopied in any

10   manner by any party without authorization of the signatory

11   below.

12

13

14        Dated this 13th day of November, 2023.

15        /s/ Elizabeth Saint-Loth, RPR, FCRR
          Official Court Reporter
16

17

18

19

20

21

22

23

24

25